1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WESTLEY OXFORD,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:14-cv-05390-RBL-KLS

REPORT AND RECOMMENDATION

Noted for January 23, 2015

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance and supplemental security income ("SSI") benefits. This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits be

reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

        On July 5, 2011, plaintiff filed an application for disability insurance benefits and another

one for SSI benefits, alleging in both applications he became disabled beginning January 1,

2006. See ECF #10, Administrative Record ("AR") 19. Both applications were denied upon

initial administrative review on August 19, 2011, and on reconsideration on November 10, 2011.

REPORT AND RECOMMENDATION - 1

1   See id. A hearing was held before an administrative law judge ("ALJ") on November 15, 2012,

2   at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See

3   AR 38-73.

4          In a decision dated November 29, 2012, the ALJ determined plaintiff to be not disabled.

5   See AR 19-33. Plaintiff's request for review of the ALJ's decision was denied by the Appeals

6   Council on March 13, 2014, making that decision the final decision of the Commissioner of

7   Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481. On May 14,

8   2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final

9

10  decision. See ECF #3. The administrative record was filed with the Court on July 22, 2014. See

11  ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the

12  Court's review.

13         Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

14  for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical

15  opinion evidence from Kashiff Khau, M.D., Guillermo Rubio, M.D., and Robert Hoskins, M.D.;

16  (2) in assessing plaintiff's residual functional capacity; and (3) in finding plaintiff to be capable

17  of performing other jobs existing in significant numbers in the national economy. For the reasons

18

19  set forth below, the undersigned agrees the ALJ committed reversible error in evaluating the

20  opinion of Dr. Khau and in finding plaintiff to be capable of performing other jobs existing in

21  significant numbers in the national economy, and thus in determining plaintiff to be not disabled.

22  Accordingly, the undersigned recommends that defendant's decision to deny benefits be reversed

23  on this basis, and that this matter be remanded for further administrative proceedings.

24

25                                    DISCUSSION

26         The determination of the Commissioner that a claimant is not disabled must be upheld by

REPORT AND RECOMMENDATION - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of Dr. Khau's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

REPORT AND RECOMMENDATION - 4

omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A state agency physical evaluation form was completed by Dr. Khau in late July 2012, in which plaintiff's acute pancreatitis was found to have a "[v]ery significant interference with [his] ability to" sit, walk, lift and carry. AR 577. Dr. Khau also found that plaintiff was "restricted mobility, agility or flexibility" in regard to bending, crouching, kneeling, pulling, pushing, and stooping, and that he was "[s]everely limited" in his ability to work, meaning he was "unable to lift at least 2 pounds or unable to stand and/or walk." Id. With respect to Dr. Khau's opinion, the ALJ found in relevant part:

> . . . This opinion is given some weight because it is generally consistent with
> the record. Although vague, it suggests the claimant suffers from severe
> conditions that reduce functional ability. To support his limitations, [Dr.]
> Khau cited no signs or proof of limits on agility, mobility, or flexibility. Gait
> and station were normal. Back was within normal limits.

REPORT AND RECOMMENDATION - 5

AR 31.

Plaintiff "concedes that Dr. Khau cited no specific signs of limitation" in mobility, agility or flexibility, noting further that in the same evaluation form Dr. Khau "stated that there were no such limits." ECF #13, pp. 8-9 (citing AR 576). Plaintiff thus admits the ALJ's rejection of any such restrictions was arguably supported by the evidence in the record – or rather the lack thereof – and the undersigned so finds as well. See Batson, 359 F.3d at 1195 (physician's opinion need not be accepted if brief, conclusory and inadequately supported by clinical findings). As plaintiff also argues, however, the ALJ did not provide a sufficient basis for rejecting Dr. Khau's opinion that he is severely limited in his overall ability to work.

The ALJ found Dr. Khau's opinion to be "vague", which certainly can be a valid reason for rejecting a medical opinion. See id. But the ALJ also stated he was giving that opinion "some weight" because it was "generally consistent with the record," noting further that it suggested plaintiff "suffers from severe conditions that reduce functional ability." AR 31. In other words, despite finding Dr. Khau's opinion to be vague, the ALJ appears to have accepted it to at least some extent. However, given that the ALJ found plaintiff had the residual functional capacity ("RFC") to perform a full range of medium work – defined as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" (see AR 25; 20 C.F.R. § 404.1567(c), § 416.967(c)) – it seems the ALJ did not actually gave Dr. Khau's opinion any weight. To the extent that he did give that opinion weight in assessing plaintiff's RFC, the undersigned is unable to discern what limitations, if any, the ALJ imposed on plaintiff as a result thereof. The ALJ's apparent rejection of Dr. Khau's opinion, thus cannot be said to be supported by substantial evidence.

REPORT AND RECOMMENDATION - 6

II.    The ALJ's Residual Functional Capacity Assessment

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

**. . . to perform a full range of medium work . . . He is fully capable of learning, remembering and performing simple, routine and repetitive 1 and 2 step work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is no production pace, few work place changes, and no "over the shoulder" supervision. He may have occasional**

REPORT AND RECOMMENDATION - 7

**contact with supervisors and coworkers, but should have minimal to no contact with the public.**

AR 25 (emphasis in original). Plaintiff argues that because of the ALJ's error in rejecting Dr. Khau's opinion, the above RFC assessment also is erroneous. The undersigned agrees that since that opinion indicates greater physical limitations than found by the ALJ, and the ALJ erred in rejecting that opinion, the ALJ's RFC assessment cannot be said to be supported by substantial evidence, and therefore is improper.

III.   The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five of that process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

REPORT AND RECOMMENDATION - 8

substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. See AR 68-69. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform the jobs of kitchen helper (Dictionary of Occupational Titles ("DOT") 381.687-010), warehouse worker (DOT 922.687-058), and recycle/reclaimer (DOT 929.687-022). See AR 69-70. When the ALJ limited the hypothetical individual to light as opposed to medium work, the vocational work testified that the jobs of laundry worker (DOT 589.685-038), newspaper carrier (DOT 292.457-010) and fast food worker (DOT 311.472.010) also could be performed. See AR 70. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, and therefore not disabled. See AR 32-33.

Plaintiff argues the ALJ erred in finding him to be capable of performing the above jobs, because the ALJ failed to resolve a conflict between the vocational expert's testimony and the description of those jobs contained in the DOT. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ, furthermore, has the affirmative responsibility to ask the vocational expert about possible conflicts between his or her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Thus, before relying on evidence obtained from a vocational expert to support a finding of not disabled, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

REPORT AND RECOMMENDATION - 9

Specifically, plaintiff argues the DOT's descriptions of each of the jobs identified by the vocational expert require a reasoning level greater than that indicated by the ALJ's RFC assessment, a conflict the ALJ failed resolve. With the exception of the job of kitchen helper, which requires level 3 reasoning,[2] the DOT describes those jobs as requiring Level 2 reasoning, which is defined as follows:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

DOT, App. C, 1991 WL 688702; see also DOT 922.687-058, 1991 WL 688132; DOT 929.687-022, 1991 WL 688172; DOT 589.685-038, 1991 WL 684490; DOT 292.457-010, 1991 WL 672569; DOT 311.472-010, 1991 WL 672682. Plaintiff asserts the ALJ's determination that he is capable of learning, remembering and performing simple, routine and repetitive 1 and 2 step work tasks, involving simple work instructions, in a routine, predictable, and low stress work environment (defined as one in which there is no production pace, few work place changes), is more analogous to Level 1 reasoning, which is defined as:

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, App. C, 1991 WL 688702. The undersigned agrees that Level 1 reasoning appears to be much more analogous to the ALJ's assessed limitations, and therefore that a conflict exists between the vocational expert's testimony and the DOT, which the ALJ did not address, let alone resolve, in his decision. See AR 32-33.

---

[2] Level 3 reasoning is defined as:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, App. C, 1991 WL 688702; see also DOT 381.687-010, 1991 WL 673256.

REPORT AND RECOMMENDATION - 10

Defendant argues there is no conflict between the vocational expert's testimony and the DOT's descriptions of the above jobs, asserting that reasoning level is only one component of "General Educational Development" ("GED"), which is described in relevant part as:

> . . . embrac[ing] those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature, which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.

DOT, App. C, 1991 WL 688702. Accordingly, defendant asserts GED "is not intended as a job description or requirement, or as reflecting the particular mental demands of the jobs listed in the DOT," but rather it "describes in general terms the educational level expected of someone who performs a given job." ECF #14, p. 10. Defendant further asserts that because residual functional capacity "represents the most the claimant can do despite the physical and/or mental limitations caused by his medical impairments and does not incorporate educational background," it "does not reasonably correlate to" RFC. Id. (citing 20 C.F.R. §§ 404,1545(a), (c), § 416.945(a), (c), § 404,1560(c), § 416.960(c)).

In determining whether an individual possesses the reasoning level required by the DOT, therefore, defendant argues the Court should look to that individual's general level of education (e.g., high school, college, etc.), rather than focus on one aspect of the RFC assessment that may correlate with reasoning level. Specifically, defendant notes plaintiff completed high school and two years of college, which means he has "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above." ECF #14, p. 11 (quoting 20 C.F.R. § 404.1564(b), § 416.964(b)). Defendant goes on to note that "someone with these educational abilities" is generally considered to be capable of doing "semi-skilled through skilled work," and that if "there is no other evidence to contradict it," a claimant's numerical grade level

REPORT AND RECOMMENDATION - 11

will be used to determine his or her educational abilities. Id.

Since "[a]n individual's level of education may certainly increase over time, but it does not decrease," and since each of the jobs the vocational expert identified has a special vocational preparation ("SVP") of 2 – which is consistent with both the Commissioner's definition of unskilled work and a limitation to one and two step work tasks – defendant asserts the ALJ did not err in finding plaintiff to be capable of performing those jobs. This argument lacks merit for several reasons. First, while it may be that GED represents "education of a general nature which does not have a recognized, fairly specific occupational objective," it also embraces "those aspects of education . . . which are *required* of the worker for satisfactory job performance." DOT, App. C, 1991 WL 688702 (emphasis added). Thus, although the educational nature that GED represents may lack a specific occupational objective, the specific aspects thereof are still required in order to perform the job satisfactorily.

Defendant is incorrect, therefore, that GED educational aspects are not intended as job requirements. Nor is there any indication in Appendix C that those aspects are not intended to reflect the particular mental demands of the jobs defined elsewhere in the DOT. Indeed, the six different reasoning levels in Appendix C are very specific in terms of the mental functional tasks encompassed thereby. See DOT, App. C, 1991 WL 688702. While GED reasoning levels may not *completely* correlate with RFC, this does not mean they cannot *reasonably* be correlated therewith. Defendant's argument also ignores the fact that despite plaintiff's general education level, the ALJ nevertheless found he was limited to learning, remembering and performing simple, routine and repetitive 1 and 2 step work tasks, involving simple work instructions, in a routine, predictable, and low stress work environment, in which there is no production pace and few work place changes. Thus, even the ALJ believed plaintiff was far less capable functionally

1   than his general educational background might otherwise indicate.

2       As for defendant's argument that each of the jobs the vocational expert identified consists

3   of unskilled work – and therefore that each is consistent with the ALJ's limitation to one and two

4   step tasks – "[t]he problem for" defendant as noted by one district court "is that she is conflating

5   two separate vocational considerations." Meissel v. Barnhart, 403 F.Supp.2d 981, 983 (C.D. Cal.

6   2005). As that court succinctly explained:

7           . . . [C]ontrary to the Commissioner's argument here, the SVP level in a DOT
            listing indicating unskilled work, does not address whether a job entails only
8           simple, repetitive tasks. *See, e.g., Lucy v. Chater*, 113 F.3d 905, 909 (8th
            Cir.1997); *Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D.Okla. Oct.15,
9           2004); *Hall v. Barnhart*, 2004 WL 1896969, at *3 (D.Me. Aug.25, 2004). A
            job's SVP is focused on "the amount of lapsed time" it takes for a typical
10          worker to learn the job's duties. DOT at 1009. A job's reasoning level, by
            contrast, gauges the minimal ability a worker needs to complete the job's
11          tasks themselves. As one court noted, "SVP ratings speak to the issue of the
            level of vocational preparation necessary to perform the job, not directly to the
12          issue of a job's simplicity, which appears to be more squarely addressed by
            the GED [reasoning level] ratings." *Hall-Grover v. Barnhart*, 2004 WL
13          1529283, at *4 (D.Me. April 30, 2004). Here, the one vocational consideration
            directly on point with the limitation contained in the RFC is a job's reasoning
14          level score.

15  Id. Accordingly, the fact that evidence in the record may support the ALJ's finding that plaintiff

16  could perform unskilled work, does not necessarily mean that plaintiff has the level of reasoning

17  necessary to satisfactorily perform the above jobs. See also Lucy v. Chater, 113 F.3d 905, 909

18  (8th Cir. 1997) (noting that "[m]any of the jobs listed [in the DOT] require level two reasoning

19  or higher in the unskilled sedentary job category").

20      Defendant argues that instead of relying on a comparison between a job's reasoning level

21  and the claimant's RFC, the Court should consider the record as a whole in determining whether

22  a conflict exists between the vocational expert's testimony and the DOT's job descriptions. This

23  assertion, though, fails to take into account the fact that RFC – at least when properly assessed

REPORT AND RECOMMENDATION - 13

by the ALJ – is already based on consideration of the record as a whole. See SSR 96-8p, 1996 WL 374184, at *2 (residual functional capacity is maximum amount of work claimant can do based on all relevant evidence in record). Further, in arguing no conflict should be found based on plaintiff's general education background, defendant in essence is asking the Court to ignore the ALJ's RFC assessment. Presumably had the ALJ found the general education background aspect of plaintiff's vocational profile to be decisive in determining plaintiff's reasoning ability, he would not have assessed the mental functional limitations that he did, but rather merely noted the fact that plaintiff had completed more than 12 years of schooling.

Defendant cites one Seventh Circuit and two Eighth Circuit cases to support her assertion that "simplistic reliance on reasoning levels in disregard of the rest of the record is unreasonable and an untenable approach." ECF #14, p. 12. But in comparing the level of reasoning required by the DOT to the RFC assessment – which as just discussed when properly arrived at by the ALJ is based on his or her consideration of the record as a whole – the Court does not simply rely on the former, but instead gives appropriate attention to the overall evidence in the record regarding the claimant's ability to function. Indeed, as noted above, the Commissioner's own regulations state that a claimant's general background educational abilities as represented by his or her numerical grade level will be used only "if there is no evidence to contradict it." 20 C.F.R. § 404.1564(b), § 416.964(b). The mental functional limitations the ALJ assessed based on his review of the record indicates that there certainly is evidence to contradict it in this case.

Further, none of the cases defendant cites actually help her here. In Terry v. Astrue, 580 F.3d 471 (7th Cir. 2009), the Seventh Circuit found the record suggested the claimant could perform level three reasoning, because she "finished high school, completed training to become a certified nurse's assistant" and had "the cognitive capacity to follow simple instructions." Id. at

478. Plaintiff, though, was found to be much more cognitively limited than the claimant in Terry, and the Court finds far more persuasive the analysis of those courts that have found level 3 reasoning requires more than the ability to follow simple instructions. See Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005).[3] In Renfrow v. Astrue, 496 F.3d 918 (8th Cir. 2007), the Eighth Circuit held that the jobs the vocational expert identified were unskilled and so did not appear to be "complex", and therefore were not inconsistent with level three reasoning. Id. at 921. But as once more discussed above, unskilled work is more analogous to a job's SVP as opposed to the required level of reasoning. Lastly, in Hillier v. Social Security Admin., 486 F.3d 359 (8th Cir. 2007), the claimant – who had the ability to "understand, remember, and follow simple, concrete instructions" – had worked as a cashier, and the Eighth Circuit found her "past work experience, in combination with the absence of any evidence showing any mental deterioration since" she last worked as a cashier, demonstrated she had "the mental capacity to work as a cashier." Id. at 367. Here, however, not only does the record indicate plaintiff's mental functional abilities have deteriorated since he last worked, but as plaintiff points out the ALJ himself found he could not

---

[3] In Hackett, the Tenth Circuit held in relevant part:

> The DOT states that both surveillance-system monitor and call-out operator require a reasoning level of three, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [, and d]eal with problems involving several concrete variables in or from standardized situations." DOT, Vol. II at 1011; *see id.*, Vol. I at 281 (categorizing surveillance-system monitor as requiring level-three reasoning); *id.* at 207 (same with regard to call-out operator). Plaintiff argues that her RFC, as found by the ALJ, is incompatible with jobs requiring a reasoning level of three. The ALJ's findings with regard to Plaintiff's RFC include: "Mentally, [Plaintiff] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." Aplt. App., Vol. II at 32. This limitation seems inconsistent with the demands of level-three reasoning. *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.1997) (rejecting contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher). We note that level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Vol. II at 1011. This level-two reasoning appears more consistent with Plaintiff's RFC.

395 F.3d at 1176.

REPORT AND RECOMMENDATION - 15

1    return to that work based on the vocational expert's testimony. See AR 32.

2         As Magistrate Judge Mary Alice Theiler has noted, "[t]here is no Ninth Circuit authority

3    defining the precise correlation between reasoning levels and functional limitations identified in

4    an RFC assessment." Skeens v. Astrue, 903 F.Supp.2d 1200, 1208 (W.D. Wash. 2012). Further,

5    "DOT reasoning levels do not directly match" the functional limitations contained in the

6    Commissioner's regulations. Id. at 1208-09 (citing Meissl v. Barnhart, 403 F.Supp.2d 981, 983

7    (C.D. Cal. 2005); Bordbar v. Astrue, 2011 WL 486540, at *3 (C.D. Cal. 2011)). As the district

8

9    court in Meissl explained:

10            The Social Security regulations separate a claimant's ability to
              understand and remember things and to concentrate into just two categories:
11            "short and simple instructions" and "detailed" or "complex" instructions. 20
              C.F.R. § 416.969a(c)(1)(iii); see also 20 C.F.R. part 404, subpart P, Appendix
12            1, Listing 12.00C(3)("You may be able to sustain attention and persist at
              simple tasks but may still have difficulty with complicated tasks"). The DOT,
13            on the other hand, employs a much more graduated, measured and finely
              tuned scale starting from the most mundane ("simple one- or two-step
14            instructions" at level one), moving up to the most complex ("applying
              principles of logical or scientific thinking ... apprehend the most abstruse
15            classes of concepts" at level six). DOT at 1010–1011. To equate the Social
              Security regulations use of the term "simple" with its use in the DOT would
16            necessarily mean that all jobs with a reasoning level of two or higher are
              encapsulated within the regulations' use of the word "detail." Such a
17            "blunderbuss" approach is not in keeping with the finely calibrated nature in
              which the DOT measures a job's simplicity.
18

19

20            Even more problematic for Meissl's position is that she ignores the
              qualifier the DOT places on the term "detailed" as also being "uninvolved."
21            This qualifier certainly calls into question any attempt to equate the Social
              Security regulations' use of the term "detailed" with the DOT's use of that
22            term in the reasoning levels. Instead of simply seeking to equate the two
              scales based on the serendipity that they happen to employ the same word
23            choice, a much more careful analysis is required in comparing the claimant's
              RFC with the DOT's reasoning scale.
24

25   403 F.Supp.2d at 984.

26        In Meissl, the plaintiff was limited "to work involving simple tasks performed at a

REPORT AND RECOMMENDATION - 16

routine or repetitive pace," which the district court found was not inconsistent with Level 2

reasoning. See 403 F.Supp.2d at 982-85. In so finding, the court noted "the ALJ found that [the

plaintiff] could perform not just simple tasks but also ones that had some element of

repetitiveness to them," whereas "[a] reasoning level of one on the DOT scale requires slightly

less than this level of reasoning." Id. at 984. The Meissl court went on to explain that "[a]

reasoning level of one indicates, both by the fact that it is the lowest rung on the development

scale as well as the fairly limited reasoning required to do the job, as applying to the most

elementary of occupations; only the slightest bit of rote reasoning being required." Id. (noting as

examples of jobs with this level of reasoning in DOT: checker ("[c]ounting cows as they come

off a truck"), bottling-line attendant ("pasting labels on filled whiskey bottles"), and vacuum

tester ("tapping the lid of cans with a stick")).

A number of district courts in this Circuit, as pointed out by defendant, have found a

limitation to one-to-two step tasks or instructions to be more consistent with level 2 reasoning.

See Lee v. Astrue, 2010 WL 653980, at *10-*11 (E.D. Cal. Feb. 19, 2010); Seechan v. Astrue,

2010 WL 1812637, at *10-*11 (E.D. Cal. May 5, 2010); Angulo v. Astrue, 2009 WL 817506, at

*11-12 (E.D. Cal. Mar. 27, 2009); Harrington v. Comm'r of Social Sec. Admin., 2008 WL

4492614, at *9-*10 (S.D. Cal. Sept. 29, 2008). Although not all of these courts explain the basis

for their holdings, in none of them is there any indication that the claimant was more limited than

a restriction to one-to-two step tasks or instructions. Some courts have emphasized the fact that

the ALJ did not limit the claimant merely to simple one-or-two step instructions, thereby

indicating potentially greater abilities than represented by level 1 reasoning. See Skeens, 903

F.Supp.2d at 1211; Harrington, 2008 WL 4492614, at *10. Others have concentrated on a lack of

evidence supporting a "deviation" from the Level 1 reasoning definition. Pouria v. Astrue, 2012

REPORT AND RECOMMENDATION - 17

WL 1977278, at *3 (C.D. Cal. June 1, 2012); <u>see also</u> <u>Hamlett v. Astrue</u>, 2012 WL 469722, at *4 (C.D. Cal. Feb. 14, 2012); <u>Grigsby v. Astrue</u>, 2010 WL 309013, at *2 (Jan. 22, 2010).

In a recent case substantially similar to the one at hand, the undersigned found the fact that the ALJ limited the claimant not just to simple routine and repetitive tasks with one-to-two step instructions, but also to jobs requiring few decisions and few changes with short, simple instructions, to be more analogous to level 1 reasoning. See <u>Warrick v. Colvin</u>, Case No. 3:14-cv-05284-RBL, ECF #16. As noted by the district court in <u>Meissl</u>, Level 1 reasoning at the very least requires something "slightly less than" the ability to perform simple tasks with "some element of repetitiveness to them." 403 F.Supp.2d at 984. The claimant's mental functional limitations in <u>Warrick</u> clearly were far more restrictive than this. Here too, the limitations the ALJ imposed indicate much greater restriction than in <u>Meissl</u>, but rather appear to contemplate jobs where "fairly limited reasoning [is] required" to do the work that is indicative of Level I reasoning. <u>Id.</u>

IV.    <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan</u>

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence concerning plaintiff's physical limitations, his RFC and his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 23, 2015**, as noted in the caption.

DATED this 2nd day of January, 2015.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19